[Civ. No. 24056. Third Dist. Dec. 29, 1986.]

ZURICH INSURANCE COMPANY et al.,
Plaintiffs, Cross-defendants and Appellants, v.
WINFORD C. PETERSON,
Defendant, Cross-complainant and Respondent;
TRI-TOOL, INC., et al., Defendants and Respondents.

## Counsel

Keogh, Marer & Flicker, Marer, Marer & Schuck, Gerald Z. Marer, Alan G. Marer, John F. Schuck, Owen, Melbye & Rohlff and Yale W. Rohlff for Plaintiffs, Cross-defendants and Appellants.

Peter B. Van Gelder Deipenbrock & Paras, George E. Paras and Greve Clifford for Defendant, Cross-complainant and Respondent.

Weintraub, Genshlea, Hardy, Erich & Brown, Anthony D. Osmundson and Sara A. Clark for Defendants and Respondents.

## Opinion

**CARR, J.**—In this appeal from a summary judgment, we determine when, for purposes of insurance coverage, an act or offense of malicious prosecution is "committed." Is it the date on which the maliciously prosecuted action was filed? Or, as held by the trial court herein, does the "when" period encompass the entire time from the initiation of the maliciously prosecuted action by the filing of the complaint to the termination by final judgment, with joint and several liability on all insurers providing coverage within this time frame? We conclude that under the insurance policy provisions herein, the controlling date is the date of filing the complaint. This necessarily engenders the further finding that, for insurance purposes, malicious prosecution is not a continuing tort.

Respondent Winford C. Peterson (Peterson) was awarded damages of $2.3 million in a malicious prosecution action against Tri-Tool, Inc. (Tri-Tool). A dispute then arose as to whether Tri-Tool's successive insurers during the pendency of the malicious prosecution action were jointly and severally liable for costs of defending Tri-Tool and for satisfying the Peterson judgment.

Zurich Insurance Company (Zurich) and American Guarantee and Liability Insurance Company (American), appellants herein, filed an action for declaratory relief to determine this issue. The trial court granted motions for summary judgment in favor of Peterson, Tri-Tool and Home Insurance

Company (Home) and held Zurich and American liable for the unsatisfied portion of the judgment, some $2.1 million.

On appeal, Zurich and American contend (1) they had no duty to defend or indemnify Tri-Tool as Tri-Tool's act of malicious prosecution was committed prior to the effective dates of the Zurich and American insurance policies; (2) Insurance Code section 533[1] precludes coverage for malicious prosecution or, alternatively, limits appellants' liability to defense costs; (3) appellant Zurich, as an excess insurer, had no duty to defend the malicious prosecution action; (4) respondent Home Insurance Company breached its duty of good faith and fair dealing owed to both appellants and Tri-Tool, thereby relieving appellants of any liability; and (5) respondents' collusion in reaching an agreement in the malicious prosecution case absolves appellants of liability. We shall find for appellants on their first contention and reverse the summary judgment. This finding is dispositive of the appeal and renders it unnecessary to reach the remaining appellate contentions.

FACTUAL AND PROCEDURAL BACKGROUND

This appeal is the culmination of proceedings in three separate actions in the trial court. A factual review of each case is necessary to the resolution of the essential issue we consider.

1. Tri-Tool, Inc. v. Peterson (Sacramento Super. Ct. No. 285067)

On October 31, 1979, Tri-Tool, Inc. filed suit against its president, Winford Peterson, seeking rescission of his employment contract. The complaint alleged Peterson made fraudulent misrepresentations to gain employment, breached the employment contract and grossly mismanaged Tri-Tool's business. Peterson cross-complained, charging breach of contract and tortious interference with contractual relations.

At the time the complaint was filed, Tri-Tool was insured for malicious prosecution by Home. Home's policy provided coverage in the sum of $500,000 for personal injury and stated, "This Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury (herein called ' "personal injury" ') arising out of one or more of the following offenses: [¶] Group A—false arrest,

---

[1]Insurance Code section 533 provides in relevant part: "An insurer is not liable for a loss caused by the wilful act of the insured; . . ."

detention or imprisonment, or malicious prosecution; [¶] . . . *if such offense is committed during the policy period. . . ."* (Italics added.)

In February 1980, Home's policy was replaced by a $500,000 general policy issued by American and a $5 million excess policy by Zurich. American's policy provided, "The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury . . . to which this insurance applies, sustained by any person . . . and arising out of the conduct of the named insured's business, . . ." The policy defined "personal injury" as an "injury arising out of one or more of the following *offenses committed during the policy period:* [¶] *false arrest, detention, imprisionment [sic],* or malicious prosecution; . . ." (Italics added.)

Zurich's policy provided coverage for personal injury, including "injury resulting from false arrest, detention or imprisonment, wrongful entry or eviction or other invasion of private occupancy, *malicious prosecution* or humiliation except that maliciously inflicted by, at the direction of, or with the consent of the insured." "Occurrence" of malicious prosecution was defined as "*an act* or series of acts of the same or similar nature, *committed during this policy period* which causes such personal injury." (Italics added.)

In November 1980 the trial court ordered the action between Tri-Tool and Peterson to arbitration, as provided by the parties' employment contract. In October 1981 the arbitration panel awarded Peterson $188,007 in damages on his cross-complaint. In a corrected award in November 1981, the panel made specific findings, including one that Peterson committed no acts of fraud or misrepresentation to induce his employment. The trial court confirmed the corrected award and Tri-Tool paid the judgment.

2. Peterson v. Tri-Tool, Inc. (Sacramento Super. Ct. No. 295169)

After initially filing a premature complaint, Peterson filed his first amended complaint for malicious prosecution against Tri-Tool and its officers on December 7, 1981. Tri-Tool's defense was tendered to and accepted by Home. On February 25, 1983, Home contacted Zurich and American to inform them of their potential liability and request their participation in the defense. Zurich had been aware of the Tri-Tool v. Peterson litigation and in 1980 had refused to defend Tri-Tool against Peterson's cross-complaint because their policies became effective after the purported loss date. Zurich and American refused to defend, contending the act of malicious prosecu-

tion occurred on the date Tri-Tool filed its complaint against Peterson in October 1979, which was prior to the effective date of their policies. Letters and telephone calls were exchanged between the insurance carriers. Home informed Zurich and American that the trial judge estimated Peterson's potential judgment could be as high as $1.5 million. Home also conveyed Peterson's settlement demands to Zurich and American. Both companies refused to participate in settlement discussions.

On June 10, 1983, the day of trial, the parties stipulated that Peterson could file an amended complaint to allege a second cause of action for negligent infliction of emotional distress. The court was informed Peterson and the individual directors had reached a settlement and that Peterson was dismissing his complaint against the directors and proceeding only against Tri-Tool. The settlement provided in part for a payment of $250,000 to Peterson and an assignment to Peterson of Tri-Tool's rights against appellants. Peterson agreed not to execute any judgment he might receive against Tri-Tool. The parties waived a jury trial and tried the matter before the court. Judgment against Tri-Tool was entered September 8, 1983, under which Peterson was awarded (1) $200,000 for lost wages, (2) $1.975 million for emotional distress and damage to his reputation, (3) $100,000 for exemplary damages and (4) $87,500 for attorney fees in the underlying action.

On October 4, 1983, Peterson made a demand on Zurich and American for approximately $2.1 million in satisfaction of the balance of the malicious prosecution judgment. Zurich and American rejected Peterson's demand and filed an action for declaratory relief, the action at issue in the present appeal.

3. Zurich Insurance Co. and American Guarantee and Liability Insurance Co. v. Peterson; Tri-Tool, Inc.; and Home Insurance Co. (Sacramento County Super. Ct. No. 315626)

Appellants first filed their complaint for declaratory relief on October 31, 1983. The complaint, as subsequently amended, raised the contentions now urged on appeal. Peterson filed a cross-complaint which (1) sought payment of the unsatisfied portion of the Peterson v. Tri-Tool judgment under an assignment to Peterson of Tri-Tool's bad faith claim against appellants; (2) sought payment of the judgment based on appellants' failure to defend Tri-Tool; (3) alleged that if appellants' policies did not provide coverage for malicious prosecution, appellants were negligent in failing to provide such coverage; and (4) alleged a bad faith refusal to pay the judgment after Peterson's demand for payment, pursuant to Insurance Code section 790.03. Peterson also sought $50 million in punitive damages.

In January 1984, Peterson filed a motion for summary judgment in which Home and Tri-Tool subsequently joined. In February 1984, Zurich and Home also moved for summary judgment.

The court held, inter alia, that malicious prosecution is a continuing offense and that appellants were therefore bound to defend Tri-Tool and to indemnify their insured for the judgment. Judgment was entered in favor of Peterson, Tri-Tool and Home on the amended complaint and for Peterson on counts I-III of his cross-complaint in the amount of $2,135,003.56, including costs, with interest at 10 percent from September 8, 1983.

This appeal followed.

## DISCUSSION

■ The elements of a cause of action for malicious prosecution are (1) a prior action commenced by or at the direction of defendant, (2) brought without probable cause and (3) initiated with malice, (4) which terminated in favor of plaintiff. (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 50 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878]; *Iram Enterprises* v. *Veditz* (1981) 126 Cal.App.3d 603, 607 [179 Cal.Rptr. 1]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 255, pp. 2531-2532.) A favorable termination of the maliciously prosecuted action is certainly an essential factor in the successful prosecution of a malicious prosecution action. As stated by the court in *Babb* v. *Superior Court* (1971) 3 Cal.3d 841 [92 Cal.Rptr. 179, 479 P.2d 379], " 'The theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused, and coupled with the other elements of lack of probable cause and malice, establishes the tort, that is, the malicious and unfounded charge . . . against an innocent person. If the accused were actually convicted, the presumption of his guilt or of probable cause for the charge would be so strong as to render wholly improper any action against the instigator of the charge.' (*Jaffe* v. *Stone* [1941] 18 Cal.2d 146, 150 [114 P.2d 335].) Although the original proceeding in *Jaffe* was criminal, the gist of the statement is equally applicable to cases, like the one at bench, where the main action is civil." (P. 846; see also *Asia Investment Co.* v. *Borowski* (1982) 133 Cal.App.3d 832, 837 [184 Cal.Rptr. 317, 30 A.L.R.4th 561].)

That a favorable termination of the offending action is a prerequisite to the filing of the malicious prosecution action is not determinative of the issue before us. The insurance policies in question made no references to any particular dates—i.e., the filing of the complaint, the entry of judgment —in relationship to the malicious prosecution coverage. The policy provi-

sions state only that the coverage is effective if the act or offense of malicious prosecution occurred or was committed during the policy period.

The issue considered in this appeal was addressed for the first time by a California court in *Harbor Ins. Co.* v. *Central National Ins. Co.* (1985) 165 Cal.App.3d 1029 [211 Cal.Rptr. 902], review denied, filed subsequent to the trial court's ruling herein. In the *Harbor Ins. Co.* case, *supra,* a corporate employer unsuccessfully prosecuted an action against its former president and chairman to rescind a compensation and settlement agreement between the parties. The former employee then filed a malicious prosecution action against the corporation. During the six years the initial litigation was pending, the corporation had insurance covering malicious prosecution with successive primary and excess insurers. At the time the malicious action was filed, the corporation was insured by Zurich Insurance Company as the primary carrier and by Harbor Insurance Company as the excess carrier. During the pendency of the action Argonaut Insurance Company and Midland Insurance Company were the primary and excess carriers respectively. At the time the judgment was rendered in favor of the former employee in the malicious action, a third carrier, Central National Insurance Company was the sole insurer.

The *Harbor* court declined to formulate a general rule as to when an act of malicious prosecution occurs, but instead focused on the language of the insurance policies. Argonaut's primary coverage was identical to that of American in the instant case, providing coverage for "malicious prosecution . . . if such offense is committed during the policy period." Argonaut contended its policy did not provide coverage to the insured as the policy was not in effect either when the complaint was filed or when the underlying suit was terminated. Central and Harbor, like Peterson, Tri-Tool and Home herein, urged the offense was a "continuing occurrence," committed throughout the prosecution of the action. The court rejected the continuing occurrence concept and determined the critical date was the filing of the complaint. In so doing, the court adopted the rationale of the apparent majority in other state jurisdictions and one federal district court. (See *Muller Fuel Oil Co.* v. *Insurance Co. of North America* (1967) 95 N.J. Super. 564 [232 A.2d 168]; *Paterson Tallow Co.* v. *Royal Globe Ins. Co.* (1982) 89 N.J. 24 [444 A.2d 579]; *S. Freedman & Sons, Inc.* v. *Hartford Fire Ins. Co.* (D.C.App. 1978) 396 A.2d 195; *Southern Maryland Agricultural Ass'n.* v. *Bituminous Cas. Corp.* (D.Md. 1982) 539 F.Supp. 1295, 1302-1303.)

In *Muller Fuel Oil Co.* v. *Insurance Co. of North America, supra,* 232 A.2d 168, the insured brought criminal charges against a third party, Policastro,

in November 1961; the disputed insurance policy was issued in December 1962. Three months after the issuance of the policy, Policastro was acquitted and sued the insured for malicious prosecution. The court noted that although Policastro would not have been able to sue for malicious prosecution before the criminal proceeding terminated in his favor, he was injured upon the filing of the underlying complaint. ▮ The "tort of malicious prosecution is *sui generis*. The tortious act is committed ordinarily by the filing of a criminal complaint with malice and without probable cause . . . Often, as here, the accused is arrested, required to post bail to secure his liberty pending trial, and his reputation is adversely affected. . . . [T]he 'essence' of the tort is the wrongful conduct in making the criminal charge." (*Id.*, at p. 174.) The court held the act of malicious prosecution occurred when the charges were filed, which was prior to the effective date of the insurance policy in question.

In *S. Freedman & Sons, Inc.* v. *Hartford Fire Ins. Co., supra,* 396 A.2d 195, the insured filed a criminal complaint against a third party 11 days before a personal injury endorsement was added to his insurance policy. The third party was acquitted three months later. The court observed that although a cause of action for malicious prosecution could not be brought until the prior suit terminated in favor of the third party, the insurance policy provided coverage " 'if such offense is committed . . . during the policy period. . . .' " In explaining that the triggering of liability cannot logically be equated with the time of the offense, the court observed, "[a] third party . . . can secure a favorable termination and yet fail to prove that the insured is liable. Clearly, a third-party's failure to secure a favorable termination before bringing suit for malicious prosecution would not void the obligation of an insurance company to defend against such a suit, if the act alleged did fall within the policy period." (*Id.*, at p. 199; fn. omitted.) The *Freedman* court held the act of malicious prosecution occurred when the complaint was filed.

Four years later, courts in two other jurisdictions came to identical conclusions. The Maryland District Court adopted the *Freedman* case's reasoning and held coverage for malicious prosecution was provided only if the insured "engaged in conduct resulting in the application of the state's criminal process" to a third party during the policy's effective period. (*Southern Maryland Agricultural Ass'n.* v. *Bituminous Cas. Corp., supra,* 539 F.Supp. 1295, 1302-1303.)

In *Paterson Tallow Co.* v. *Royal Globe Ins. Co., supra,* the New Jersey Supreme Court adopted the state appellate court's position in *Muller* and reiterated that for insurance coverage purposes, the offense of malicious

prosecution occurs on the date the underlying complaint is filed. (444 A.2d at pp. 582-586.)

Citing *Paterson, Freedman,* and *Southern Maryland,* the court in *Harbor* concluded the offense of malicious prosecution is committed upon institution of the malicious action against the defendant stating "The cause of action does not accrue until favorable termination of the malicious action [citation] but from both the tortfeasor's and the victim's standpoint the 'offense' is 'committed' upon initial prosecution of that action. At that point the tortfeasor has invoked the judicial process against the victim maliciously and without probable cause, and the victim has thereby suffered damage."[2] (165 Cal.App.3d at p. 1037.) The court rejected the "continuing tort" theory and held that continued proceedings merely increased damages.[3]

The only contrary case, on which respondents place reliance, is *Roess* v. *St. Paul Fire & Marine Insurance Company* (M.D.Fla. 1974) 383 F.Supp. 1231.) In *Roess,* the court distinguished civil prosecutions from criminal prosecutions and rejected the *Muller* court's analysis, stating "In a criminal case, the principal act of a tortious nature is the filing of the charge or issuance of a warrant. The state thereafter controls the prosecution, not the accuser. Thus, as the New Jersey court noted, the 'essence' of the tort in those circumstances is the initiation of the charge; and the victim's principal damage is usually suffered at that moment,. . . . In a civil action, however, the malicious plaintiff remains in control of the prosecution of the suit, and the principal damage to the victim may or may not coincide with the filing of the case. The 'essence' of the tort, in other words, may well be the continued prosecution of the claim rather than its mere initiation." (*Id.,* at p. 1234.) The court rejected the notion that favorable termination was

---

[2]The court reached an identical conclusion as to Midland's excess policy. Midland's policy provided coverage for "injury arising out of . . . malicious prosecution, . . . which occur[s] during the policy period." The court construed the clause "which occur[s] during the policy period," as modifying "malicious prosecution," not the resulting injury. The court noted, "A contrary interpretation would evince the unrealistic and unreasonable proposition that Midland intended to assume responsibility for elements of damage arising, during the term of its policy, from previously committed tortious acts. Under that interpretation, presumably, a tortfeasor could purchase a policy such as this after committing the tort and thereby enjoy excess coverage for its yet-to-be unfolded consequences. An interpretation of the policy to this effect would be entirely unreasonable, and cannot be reached as being within the 'reasonable expectations of the insured.' " (*Id.,* at p. 1041.) For the reasons it had discussed with reference to the primary insurance coverage, the court held the act of malicious prosecution did not occur during Midland's policy period. (*Ibid.*)

[3]The court also rejected the argument, based on *California Union Ins. Co.* v. *Landmark Ins. Co.* (1983) 145 Cal.App.3d 462 [193 Cal.Rptr. 461], that all insurers who provided coverage during the pendency of the underlying action should bear responsibility for the judgment subsequently rendered. The court distinguished *California Union* from the case before it as involving a different type of tort (negligence) and different insurance policy terms.

merely a condition precedent to filing suit, stressing it was one of several indispensable and equally important elements of the tort. The court concluded the critical date for insurance purposes was the date of favorable termination of the prior action. (*Id.,* at p. 1233; see also *Security Mut. Casualty Co.* v. *Harbor Ins. Co.* (1978) 65 Ill.App.3d 198 [382 N.E.2d 1, 5-6] revd. on other grounds (1979) 77 Ill.2d 446 [397 N.E.2d 839].)

The *Roess* case has been consistently criticized by other courts. The *Freedman* court noted the *Roess* decision did not consider when the offense occurred, but analyzed only when liability for malicious prosecution arose. (396 A.2d at p. 199.) In *Paterson Tallow,* the court observed, "Obviously, the *Roess* court's criticism of *Muller* . . . turns upon the validity of its contention that the 'essence' of a malicious civil prosecution is the continued prosecution of the underlying civil complaint. We find this contention unpersuasive, as it seems to suggest that no cause would lie where a malicious civil complaint is filed and subsequently withdrawn by the plaintiff, there being no malicious 'continuation' of the proceedings. While the continuation of wrongfully initiated civil proceedings may be a factor in assessing the damages that accompany the maliciously prosecuted defendant's case, it can certainly have no bearing on the existence *vel non* of that person's cause of action in tort." (444 A.2d at p. 584, fn. 3.)

The *Harbor* court also found the civil-criminal distinction espoused by the *Roess* court unpersuasive. (165 Cal.App.3d 1036, fn. 5.)

We, too, reject the distinction suggested by the *Roess* court. It makes little difference whether the state or an individual controls the maliciously prosecuted action: an individual is first injured upon the filing of a complaint with malice and without probable cause. (See, e.g., *Black* v. *Hepner* (1984) 156 Cal.App.3d 656, 659 [202 Cal.Rptr. 799]; *Davis* v. *International Brotherhood of Electrical Workers* (1971) 16 Cal.App.3d 686, 696 [94 Cal.Rptr. 562]; *Fleischhauer* v. *Fabens* (1908) 8 Cal.App. 30, 34 [96 P. 17].) While some of the adverse consequences to the injured party will depend on whether a criminal prosecution is begun or a civil suit prosecuted, in each case a party's reputation is injured and legal expenses are incurred at the initiation of the malicious complaint. (See *Bertero* v. *National General Corp., supra,* 13 Cal.3d at pp. 50-51; Rest.2d Torts, § 681, coms. c, d, f.) The fact that damages increase as the prosecution continues does not transform malicious prosecution into a continuing occurrence. We join the reasoned decisions of the majority in holding that for purposes of an insurance policy which measures coverage by the period within which the "offense is committed," the tort of malicious prosecution occurs upon the filing of the complaint.

The policies issued by American and Zurich became effective after the date Tri-Tool filed its complaint against Peterson. Neither company had an obligation to defend or indemnify Tri-Tool.

### DISPOSITION

The summary judgments in favor of respondents and against appellants are reversed, and the trial court is directed to enter judgment in favor of appellants who are to recover their costs.

Blease, Acting P. J., and Sims, J., concurred.

A petition for a rehearing was denied January 27, 1987, and the petition of all respondents for review by the Supreme Court was denied April 15, 1987.