784 F.Supp. 690 (1992)
ROYAL INDEMNITY COMPANY, Plaintiff,
v.
E. Louis WERNER, Jr., Defendant.
No. 91-1334C(6).
United States District Court, E.D. Missouri, E.D.
February 20, 1992.
Peter B. Hoffman, Robert E. Tucker, Krotenhof & Ely, St. Louis, Mo., for plaintiff.
Robert Allen, Lewis, Rice & Fingersh, St. Louis, Mo., for defendant.

MEMORANDUM
GUNN, District Judge.
This is a declaratory judgment action brought by an insurer, Royal Indemnity Co. (Royal), against its insured, E. Louis Werner, Jr. The Court has jurisdiction based on diversity of citizenship because the amount in controversy exceeds $50,000 and defendant resides in Arizona while plaintiff is a Delaware corporation with its principal place of business in North Carolina. See 28 U.S.C. § 1332(a).
Werner invested in two limited partnerships. In 1982, when the partnerships became unprofitable, Werner along with other investors sued Irving Cohen, the general partner, for securities fraud. On March 31, 1986, the court entered summary judgment in favor of Cohen against Werner and the other plaintiffs, affirmed in Bastien v. R. Rowland & Co., 815 F.2d 713 (8th Cir.), cert. denied, 484 U.S. 854, 108 S.Ct. 160, 98 L.Ed.2d 115 (1987).
On October 18, 1988, Cohen filed suit against Werner and the other plaintiffs in the securities fraud action, charging them with malicious prosecution (the Cohen suit). Werner demanded that Royal defend and indemnify him in the Cohen suit, relying on his homeowners policy which he obtained on November 12, 1985, and his personal catastrophe liability policy which he subscribed to on June 1, 1987.
Both policies cover claims brought against the insured for damages due to "personal injury ... caused by an occurrence" and both define personal injury as including malicious prosecution. (Homeowners, Coverage E p. 14 & Glossary p. 3; Personal, Part II & Part I p. 2). For the homeowners policy, "`occurrence' means an accident, including exposure to conditions, which results, during the policy period, in ... [p]ersonal [i]njury." (Homeowners, Glossary 5b). The catastrophe policy reads similarly: an occurrence is "[a]n event or continuous or repeated exposure to substantially the same general, harmful conditions, which unexpectedly or unintentionally results in personal injury ... during the policy period." (Personal, Part I p. 2).
Royal filed this declaratory judgment action contending it has no obligation to defend or indemnify Werner. Werner counterclaimed and filed a motion for summary judgment. Royal responded and filed its motion for judgment on the pleadings to which Werner responded.
One facet of the parties' dispute is whether Cohen's alleged personal injury *691 arising from malicious prosecution resulted during the policy period. Royal contends that its policies do not cover damages caused by a maliciously prosecuted suit filed prior to the policy's effective date. Werner maintains, however, that his policies do cover this malicious prosecution claim because the operative event triggering Royal's liability is the termination of the securities fraud action in Cohen's favor and this occurred during the policy period.
In support of his position Werner relies on Missouri law which specifies that favorable termination is an element of the tort of malicious prosecution. Euge v. LeMay Bank & Trust Co., 386 S.W.2d 398, 399 (Mo.1965); Walkenhorst v. Lowell H. Listrom & Co., 752 S.W.2d 825, 827 (Mo.Ct. App.1988). Werner also claims entitlement to indemnity because the Cohen suit bases Werner's liability not only on the filing of the underlying action but also on its maintenance, part of which took place during the policy period.
Additionally, Werner points to two sections of the policy which he contends support his position. First, he asserts that Royal's interpretation is inconsistent with its requirement that the insured promptly notify Royal of "how, when and where the occurrence happened." He maintains that under Royal's interpretation its policies require an insured to notify it of every lawsuit he files. Second, Werner contends that the filing and maintenance of the securities fraud action was merely an "exposure to conditions" which caused personal injury upon its termination on October 5, 1987.
Royal advances three other bases for coverage exclusion should the Court find against it on the issue of the timing of the personal injurythe claim arises from a business pursuit, the claim arises from acts of a Board of Directors, and Werner expected or intended the damage.
As a preliminary matter, the Court should determine which law to apply. Werner assumes Missouri provides the applicable law. Royal suggests that Arizona law should guide this Court but claims that the difference is inconsequential, because for some issues neither state has applicable law and for others the law of the two states is the same. The Court agrees with Royal that it need not belabor the choice of law analysis because neither Arizona nor Missouri courts have considered when a claim of malicious prosecution accrues for purposes of an occurrence insurance policy. Furthermore, the elements of malicious prosecution are the same in both states. Compare Bradshaw v. State Farm Mut. Auto. Ins. Co., 157 Ariz. 411, 758 P.2d 1313, 1319 (1988) with Walkenhorst v. Lowell H. Listrom & Co., 752 S.W.2d 825, 827 (Mo.Ct.App.1988).
Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if he can "show that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The issue of "when" the personal injury accrued for purposes of insurance coverage is a proper question for summary judgment because neither party disputes the facts essential to resolving it. Their dispute centers instead on a pure question of law.
Of those courts which have faced this question, most conclude that the crucial event for insurance coverage is the filing of the purportedly malicious suit rather than its ultimate termination. See, e.g., Southern Md. Agric. Ass'n, Inc. v. Bituminous Casualty Corp., 539 F.Supp. 1295, 1302 (D.Md.1982); Zurich Ins. Co. v. Peterson, 188 Cal.App.3d 438, 232 Cal.Rptr. 807, 812 (1986); S. Freedman & Sons, Inc. v. Hartford Fire Ins. Co., 396 A.2d 195, 199 (D.C.1978); Paterson Tallow Co. v. Royal Globe Ins. Co., 89 N.J. 24, 444 A.2d 579, 585 (1982). Some of these cases interpret policies that cover malicious prosecution "if such offense is committed during the policy period." Southern Md. Agric. Ass'n, Inc., 539 F.Supp. at 1301; Zurich Ins. Co., 232 Cal.Rptr. at 810; S. Freedman & Sons, Inc., 396 A.2d at 199. The policy language in others obligates the insurance company to pay all sums the insured became "legally obligated to pay as damages" because of committing the offense of malicious prosecution. Paterson Tallow Co., 444 A.2d at *692 586; Muller Fuel Oil Co. v. Insurance Co. of N. Am., 95 N.J.Super. 564, 232 A.2d 168, 173 (App.Div.1967).
These cases state that the suit's inception injures the defendant even though termination of the suit must take place before the defendant can recover damages. Zurich Ins. Co., 232 Cal.Rptr. at 813; S. Freedman & Sons, Inc., 396 A.2d at 199; Muller Fuel Oil Co., 232 A.2d at 175. Thus, the time at which the insured files the underlying lawsuit controls whether he receives insurance coverage. Under this interpretation an individual who sees that his lawsuit may spawn a malicious prosecution claim cannot purchase insurance and shift his obligation to an unwary insurer. Muller, 232 A.2d at 175.
At least two courts take a contrary position and hold that insurance liability accrues when the underlying suit ends favorably to the defendant, because that is the final element of the tort of malicious prosecution. Roess v. Saint Paul Fire & Marine Ins. Co., 383 F.Supp. 1231, 1235 (M.D.Fla.1974); Security Mut. Casualty Co. v. Harbor Ins. Co., 65 Ill.App.3d 198, 21 Ill.Dec. 707, 711-12, 382 N.E.2d 1, 5-6 (1978), rev'd on other grounds, 77 Ill.2d 446, 34 Ill.Dec. 167, 397 N.E.2d 839 (1979). In Roess, the court explicitly rejects any characterization of an insurance company as unwary or vulnerable. Roess, 383 F.Supp. at 1235. Rather, it asserts that the insurer could inquire whether the applicant has any pending lawsuits and then refuse to insure individuals purchasing policies at the eleventh hour of clearly ill-fated litigation. Id.; see also Paterson Tallow Co., 444 A.2d at 588 (Schreiber, J., dissenting).
Both positions have some merit. But in Continental Ins. Co. v. Northeastern Pharmaceutical & Chem. Co., 811 F.2d 1180, 1191 (8th Cir.1987), aff'd in part and rev'd in part on rehearing, 842 F.2d 977, 984 (8th Cir.), cert. denied, 109 S.Ct. 66, 102 L.Ed.2d 43, 488 U.S. 821 (1988), the Eighth Circuit speaks to this issue, albeit dicta, in quoting with approval Muller Fuel Oil Co. v. Insurance Co. of N. Am., 95 N.J.Super. 564, 232 A.2d 168, 173 (1967), a case holding that injury occurs with the filing of the action: "In a claim based on malicious prosecution the damage begins to flow from the very commencement of the tortious conductthe making of the criminal complaint. The wrong and damage are practically contemporaneous." In Continental Insurance, the court adopts the "exposure theory" of insurance liability for improper disposal of hazardous wastes, Continental Ins. Co., 811 F.2d at 1191, and the en banc rehearing affirms that conclusion. Continental Ins. Co. v. Northeastern Pharmaceutical & Chem. Co., 842 F.2d 977, 984 (8th Cir.), cert. denied, 488 U.S. 821, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988). Although Continental Ins. Co. construes Missouri law without cases to guide it, see id., this Court faces the same challenge if it must interpret Arizona law. The elements of malicious prosecution are the same for both states, and there is no reason to take a different approach toward interpreting the laws of Arizona.
Furthermore, this Court finds strength in the position cited in Continental Insurance, particularly under the policy language at issue here. Werner's policies protect him with regard to claims due to "personal injury ... during the policy period." From the injured person's perspective, the harm occurs when that individual is maliciously named as a defendant in a lawsuit. His damages may multiply as time passes but the injury materialized at the moment the suit was filed. Zurich Ins. Co., 232 Cal.Rptr. at 813.
Werner's position has been rejected in instances when the policy language arguably offers stronger support for his contention than is present here. Phrases such as "legally obligated" and the "offense" of malicious prosecution provide a court much greater latitude to conclude that termination of the underlying action triggers insurance liability because the tort of malicious prosecution, and hence ultimate legal liability, requires that event. See Southern Md. Agric. Ass'n, Inc., 539 F.Supp. at 1301 (offense); Zurich Ins. Co., 232 Cal. Rptr. at 810 (same); S. Freedman & Sons, Inc., 396 A.2d at 199 (same); Paterson Tallow Co., 444 A.2d at 586 (legally obligated); *693 Muller Fuel Oil Co. v. Insurance Co. of N. Am., 232 A.2d 168, 173 (App.Div. 1967) (same).
In conclusion, the Court finds no basis either in the policy definitions, policy requirements or in the basis of the Cohen suit for reaching a contrary conclusion. The fact that the Cohen suit refers to the maintenance of the securities fraud action adds nothing to the malicious prosecution count. The language "exposure to conditions," contained in the definition of occurrence, does not support Werner's position. The Court concludes that the damage occurred when the underlying suit was filed. The Court is not persuaded that the policy's notice requirements are inconsistent with the interpretation advanced by Royal in this case. Moreover, it is certainly within the insurer's prerogative to require notice of every lawsuit that its insured files.
Accordingly, the Court will grant Royal's judgment on the pleadings.