No. 89-505

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

SCOTT L. GRABER, individually,
and doing business as
NORTHWEST PUBLISHING COMPANY,

Plaintiff and Appellant,

-vs-

STATE FARM FIRE AND CASUALTY
COMPANY, COLIN C. ANDREWS, and
DUANE PASEMAN,

Defendants and Respondents.

**FILED**

SEP 4 1990

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael H. Keedy, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Dana L. Christensen, Debra D. Parker; Murphy,
Robinson, Heckathorn & Phillips, Kalispell, Montana

For Respondents:

Stephen C. Berg; Warden, Christiansen, Johnson &
Berg, Kalispell, Montana


Submitted on Briefs: May 17, 1990

Decided: September 4, 1990

Filed:

*[signature]*

Clerk

Justice Diane G. Barz delivered the Opinion of the Court.

In the fall of 1983, Scott L. Graber purchased a business insurance policy from State Farm Fire and Casualty Company. On May 29, 1987, Scott L. Graber, individually and d/b/a Northwest Publishing Company, filed a complaint in the District Court of the Eleventh Judicial District, Flathead County, alleging damages as a result of the refusal by State Farm, Colin C. Andrews and Duane Paseman to offer a defense or coverage for a claim made against Graber. On March 10, 1989, State Farm and Duane Paseman moved for summary judgment pursuant to Rule 56, M.R.Civ.P., requesting that the District Court determine as a matter of law that no coverage existed under the business policy for the claim submitted by Graber. The court granted State Farm's and Paseman's motion for summary judgment, finding that no coverage existed because there was no damage to "tangible" property. Graber appeals this decision. We affirm.

The following issues were raised on appeal:

1. Did the District Court err in granting summary judgment in favor of State Farm and Paseman?

2. Did an "occurrence" exist as defined in the State Farm Policy?

In 1976 Graber established a publishing and advertising business in Kalispell, Montana, under the assumed name of Northwest Publishing Company. Among other things, Graber published an annual, magazine-style, tourist information periodical known as

2

<u>Travel Guide</u>.  ClaraEllen Anderson had been employed by Graber at Northwest Publishing Co. since August of 1986.  She had previously worked approximately one and one-half years with the company as a part-time employee.  Her duties consisted of typesetting, lay-out, camera work and copyrighting.  Anderson also assisted in the production of <u>Travel Guide</u>.  Her involvement with the production of this publication consisted primarily of obtaining and/or writing copy relating to each geographical region.  Graber was the owner of Northwest Publishing Co. at all times during Anderson's employment.

Since 1969, Graber had purchased several insurance policies from Kalispell State Farm agent, Colin Andrews, for personal and business purposes.  In the fall of 1983, Graber contacted Andrews for the purpose of purchasing a new business policy.  Graber was purchasing a building on North Main Street in Kalispell to use as a new business location for his publishing company.  Andrews inspected the premises and thereafter issued Graber a business policy, effective on approximately November 1, 1983.  The policy provided coverage for the building and personal property to the extent of $60,000 and $19,000, respectively.  The policy also provided liability coverage in the aggregate amount of one million dollars per occurrence together with $25,000 per accident on medical coverage.  Graber also contends that at the time he purchased this business policy, that State Farm's agent, Andrews, assured him that the policy would afford Graber protection from copyright and editorial infringement claims.  However, this issue

3

is not presently before this Court.

On November 6, 1985, Graber was served with a complaint filed by Alaska Northwest Publishing Co. in the United States District Court for the Western District of Washington. In its complaint, Alaska Northwest alleged that a portion of its publication, The Milepost, was copied by Graber in his publication, Travel Guide. Graber gave notice of the lawsuit to State Farm by filling out a "Fire and Casualty Claim Report" form in agent Andrews' office in Kalispell. Graber kept State Farm apprised of the subsequent developments in the litigation.

Graber agreed on May 2, 1986 to settle with Alaska Northwest by paying them $40,000 plus costs and interests on that sum to be paid over a period of five years. Prior to settling with Alaska Northwest, Graber informed State Farm that settlement appeared imminent. He asked State Farm whether it would provide a defense or coverage. State Farm did not respond.

After the settlement agreement between Alaska Northwest and Graber was signed, Graber again asked State Farm to respond to his request for a defense or coverage. On May 21, 1986, State Farm, in writing, denied coverage due to the "intentional" nature of the alleged actions, and the definition of "occurrence" in the policy. On October 21, 1986, State Farm, in writing, cancelled Graber's "Business Policy."

On May 29, 1987, Graber, individually and d/b/a Northwest Publishing Co., filed a complaint in the District Court of the Eleventh Judicial District alleging damages as a result of the

4

refusal by State Farm, Andrews and Paseman to offer a defense or coverage for a claim made against Graber. On March 10, 1989, State Farm and Paseman moved for summary judgment, requesting that the District Court determine as a matter of law that no coverage existed under the "Business Policy" for the claim submitted by Graber. The court granted State Farm's and Paseman's motion for summary judgment after finding that no coverage existed because there was no damage to "tangible" property. Graber appeals the court's decision in regard to these two defendants.

The first issue raised on appeal is whether the District Court erred in granting summary judgment in favor of State Farm and Paseman.

The business insurance policy which Graber bought provided that:

> [T]he Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, property damage or personal injury caused by an occurrence to which this insurance applies.

The essential question therefore is whether Alaska Northwest suffered "property damage" as a result of the plagiarism by Graber's employee from Alaska Northwest's publication, The Milepost. Graber first argues that Alaska Northwest's publication is tangible property. Graber notes that the Alaska Northwest's complaint stated that Graber's employee's plagiarism made its publication, The Milepost, less useful and therefore Graber argues that as a consequence "property damage" occurred to the publication.

5

The insurance policy that Graber purchased contained two definitions for "property damages," one stating that property damage occurs if "physical injury to or destruction of tangible property" is found and the other stating that property damage occurs if there is "loss of use of tangible property which has not been injured." Graber argues that the damage to Alaska Northwest's publication, as a result of Graber's plagiarism, fits within the second definition.

The publication, The Milepost, is indisputably tangible property. The dispute, however, lies in whether plagiarism of the publication constitutes property damage to the publication. While Graber argues that it does constitute property damage, respondents State Farm and Paseman argue that this case only involves copyright and trademark infringement which they argue is intangible property.

The publication The Milepost is clearly a piece of tangible property. The publication was not physically injured or destroyed and therefore it does not fit under the first definition. However, we must also examine whether Graber may recover under the second definition which states that property damage occurs if there is "loss of use of tangible property which has not been injured."

Because the trial court granted summary judgment in State Farm's favor, we view the facts in the light most favorable to Graber. See Nitschke v. Blue Cross of Montana (1988), 231 Mont. 113, 751 P.2d 175. Only if an issue of material fact remains in dispute will we reverse the trial court's grant of summary judgment. Graham v. Montana State University (1988), 235 Mont.

284, 287, 767 P.2d 301, 303.

Tangible property is property that is capable of being handled, touched or physically possessed. Lamar Truck Plaza, Inc. v. Sentry Ins. (Colo.App. 1988), 757 P.2d 1143, 1144. See also Sturges Manufacturing Co. v. Utica Mutual Ins. Co. (1973), 347 N.Y.S.2d 388, 75 Misc.2d 416 and Lay v. Aetna Ins. Co. (Tex.Civ.App. 1980), 599 S.W.2d 684. Alaska Northwest's complaint against Graber alleged "lost advertising business, . . . substantial loss of revenues, . . . irreparable injury to its reputation and good will . . . " none of which qualifies as tangible property. As the trial court correctly noted, the complaint alleges economic losses. Montana courts have consistently held that in order for economic loss to be covered by insurance a direct physical injury to tangible property must occur. Safeco Ins. Co. v. Munroe (1974), 165 Mont. 185, 527 P.2d 64; Lindsay Drilling v. U.S. Fidelity & Guar. (1984), 208 Mont. 91, 676 P.2d 203; Aetna Casualty & Surety Co. v. First Security Bank (D. Mont. 1987), 662 F.Supp. 1126. Alaska Northwest did not allege direct physical injury to its tangible property, The Milepost, but alleged only economic loss. The trial court correctly concluded Alaska Northwest's claims did not constitute property damage, or loss of use of tangible property.

The general rule is that the insurer has a duty to defend when a complaint filed against its insured sets forth facts which bring the event within the policy provisions. Atcheson v. Safeco (1974), 165 Mont. 239, 245, 527 P.2d 549, 552. The insurance company must

7

look to the allegations of the complaint to determine if there is liability coverage. McAlear v. St. Paul Ins. Companies (1972), 158 Mont. 452, 456, 493 P.2d 331, 334. However, where the complaint alleges events not within the coverage of the policy, and the insurer would not be obligated to indemnify the insured if the complaining party recovered, then the insurer has no duty to defend. Id.

State Farm denied coverage and defense to Graber on the grounds that events alleged in Alaska Northwest's complaint failed to meet the policy definition of "occurrence." Part of the policy definition of "occurrence" requires resulting property damage. The economic loss alleged to have resulted from events is not, as a matter of law, property damage. Therefore, having determined that events failed to trigger indemnity, State Farm had no duty to defend.

The second issue raised on appeal is whether an "occurrence" existed as defined in the State Farm policy.

We do not have jurisdiction to address this issue. This issue has not yet been addressed by the District Court, and therefore is not properly before this Court.

We hold the trial court's grant of summary judgment to be proper and, therefore, affirm.

_____
Justice

8

We concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

_John C. Sheehy_

_R. C. McDonough_

_Fred J. Weber_

_William E. Hunt Sr._
Justices

9