FILED

07/18/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0482

DA 22-0482

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 138

FARMERS INSURANCE EXCHANGE
and TRUCK INSURANCE EXCHANGE,

      Petitioners and Appellees,

   v.

DENNIS MINEMYER,

      Respondent and Appellant,

BRAD J. DAVEY, and DALE YATSKO,

      Respondents.

APPEAL FROM:    District Court of the Fourth Judicial District,
                   In and For the County of Missoula, Cause No. DV-20-1463
                   Honorable Shane A. Vannatta, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Robert J. Phillips, Emma L. Mediak, Garlington, Lohn & Robinson, PLLP,
          Missoula, Montana (for Dennis Minemyer)

      For Appellees:

          James David Johnson, Nicholas J. Pagnotta, Williams Law Firm, P.C.,
          Missoula, Montana

                        Submitted on Briefs:  April 12, 2023

                                 Decided:  July 18, 2023

Filed:

                      _____
                                Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Respondent and Appellant Dennis Minemyer (Minemyer) appeals from the July 20, 2022 Opinion and Order (Petitioners' Motion for Summary Judgment & Respondent Minemyer's Cross-Motion) and the accompanying July 25, 2022 Final Judgment issued by the Fourth Judicial District Court, Missoula County. The District Court's order granted the summary judgment motion of Petitioners and Appellees Farmers Insurance Exchange (Farmers) and Truck Insurance Exchange (Truck) (collectively "Insurers") and denied Minemyer's cross-motion for summary judgment, determining the Insurers had no duty to defend, and therefore no duty to indemnify, Minemyer against claims made against him in a separate lawsuit.

¶2 We address the following restated issue on appeal:

*Did the District Court err by finding Insurers had no duty to defend Minemyer under the terms of the insurance policies?*

¶3 We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 In 2018, Brad J. Davey (Davey) and Dale Yatsko (Yatsko) filed a lawsuit in Cascade County (Underlying Lawsuit), suing several named and unnamed defendants. The basic allegation of the Underlying Lawsuit was that the defendants in that case filed a baseless and unsupported lawsuit against Davey and Yatsko in 2012 (2012 Lawsuit) regarding the financing and proposed development of a golf course. Davey and Yatsko alleged the plaintiffs in the 2012 Lawsuit were then able to place a constructive trust and equitable lien against their property due to the false allegations of that lawsuit. The 2012 Lawsuit was

2

ultimately dismissed in 2017, following Davey and Yatsko's motion for summary judgment. The complaint in the Underlying Lawsuit was amended in 2019, adding Minemyer as a defendant. Minemyer, a certified public accountant, was not a named plaintiff in the 2012 Lawsuit, but Davey and Yatsko assert he assisted the 2012 Lawsuit plaintiffs to advance the lawsuit by providing false information and making defamatory statements about them.

¶5 After the Underlying Lawsuit was amended to add Minemyer as a defendant, Minemyer tendered the underlying complaint to Farmers, seeking defense and indemnity under a series of homeowners insurance policies providing coverage from 2010-2020 (Homeowner's Policy) and a series of commercial general liability (CGL) policies providing coverage from 2014-2017 (Farmers CGL Policy), and to Truck, seeking defense and indemnity under a series of CGL policies providing coverage from 2018-2021 (Truck CGL Policy). The Insurers, while continuing to defend Minemyer in the Underlying Lawsuit under a reservation of rights, filed a declaratory judgment action against Minemyer, Davey, and Yatsko in the District Court, seeking a judicial determination that they were not obligated to defend and indemnify Minemyer against claims made against him in the Underlying Lawsuit. Meanwhile, in the Underlying Lawsuit, Davey and Yatsko dismissed all defendants other than Minemyer and one other individual.

¶6 On April 26, 2021, the Insurers filed a motion for summary judgment. Along with their motion, the Insurers filed an appendix providing copies of the relevant Homeowner's,

3

Farmers CGL, and Truck CGL Policies. The relevant portions of the Homeowner's Policy provided:[1]

> 4. **Bodily injury** – under Section II – Liability Coverage, means physical harm to the body, including physical sickness or disease, to a person other than an **insured**. This includes required care, loss of services and death that results.
>
> **Bodily injury** does not include:
> a. psychological injury or effect, including by way of example but not limited to fear, depression, humiliation, anxiety, anguish, shock or distress, unless it arises from actual physical harm to the body of a person;
> b. any sexually transmitted disease;
> c. Acquired Immune Deficiency Syndrome (AIDS), AIDS related Complex, Human Immunodeficiency Virus (HIV);
> d. any auto-immune disease;
> e. any viral, bacterial, fungal or parasitic infection; or
> f. any symptom, injury, condition, effect, illness or disease related to subsection a. through e. above, or resulting from a **noxious substance**. A symptom, injury, condition, effect, illness or disease includes by way of example but not limited to fatigue, insomnia, stomachaches, headaches or ulcers.
>
> .  .  .
>
> 21. **Occurrence** – under Section II – Liability Coverage, means an accident, including exposure to conditions, which occurs during the policy period, and which results in **bodily injury**, **property damage**, or **personal injury** during the policy period. Repeated or continuous exposure to the same general conditions is deemed to be one **occurrence**.
>
> .  .  .
>
> 25. **Property damage** – under Section II – Liability Coverage means direct distinct and demonstrable, actual physical injury to or destruction of tangible property, including loss of use resulting from the distinct and demonstrable, actual physical injury to or destruction of the property.
>
> **Property damage** does not mean:

---

[1] Throughout our following quotations from the Homeowner's, Farmers GCL, and Truck GCL Policies, all language, including emphasis, is as provided in the original document.

a. actual, threatened, feared, constructive or alleged diminution of value or equity;
b. functional impairment or loss of use of property unless the property has sustained distinct and demonstrable, actual physical injury or destruction; or
c. non-economic damages.

.   .   .

**Coverage E (Personal Liability)**
We will pay those damages which an **insured** becomes legally obligated to pay because of:
1. **bodily injury** resulting from an **occurrence**; or
2. **property damage** resulting from an **occurrence**.
At our expense and with attorneys of our choice, we will defend an **insured** against any suit seeking damages covered under Coverage E (Personal Liability). Our obligation to defend a suit seeking damages ends once we have paid our applicable **stated limit**. We may investigate and settle any claim or suit seeking damages that we consider appropriate.

We do not have any duty to defend or settle any suit involving actual, alleged, threatened or declared **bodily injury** or **property damage** not covered under this liability insurance. This applies whether or not the suit is groundless, false or fraudulent.

Relevant portions of both the Farmers CGL Policy and the Truck CGL Policy provided:

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

.   .   .

**12.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general conditions.

.   .   .

**15.** "Property damage" means:
   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
   **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

5

.  .  .

**A. Coverages**
    **1. Business Liability**
        **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. []

.  .  .

        **b.** This insurance applies:
            **(1)** To "bodily injury" and "property damage" only if:
                **(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
                **(b)** The "bodily injury" or "property damage" occurs during the policy period.

            **(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

As it relates to "personal and advertising injury" coverage, the Farmers CGL and Truck CGL Policies contained amendatory endorsements with minor differences in language.

The Farmers CGL Policy provided, in relevant part:

**A. Coverages**
    **1.** Item **1. Business Liability** is amended as follows:
        **a.** The words "personal injury" or "advertising injury" in item **1.a.** are changed to read "personal and advertising injury".
        **b.** Items **1.b. (2)(a)** and **(b)** are deleted and replaced with the following:
            **(2)** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business, but

6

only if the offense was committed in the "coverage territory" during the policy period.

. . .

**13.** "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, product [or] services;

    **e.** Oral or written publication of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement" or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

While the Truck GCL Policy provided, in relevant part:

**A.** Paragraph **1. Business Liability** is amended as follows:

    **a.** Subparagraph **1.a.** is deleted and replaced with the following:

        **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

    **b.** Subparagraphs **1.b. (2)(a)** and **(b)** are deleted and replaced with the following:

        **(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

. . .

7

**F.** Definitions **1.** "Advertising Injury", **13.** "Personal Injury" and **16.** "Suit" in Section **F. Liability and Medical Expenses Definitions** is amended as follows:

.   .   .

**2.** Subparagraph **13.** is deleted and replaced with:

> **13.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> > **a.** False arrest, detention or imprisonment;
> > **b.** Malicious prosecution;
> > **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> > **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> > **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;
> > **f.** The use of another's advertising idea in your "advertisement"; or
> > **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".
>
> Damages because of "personal and advertising injury" do not include disgorgement, restitution or any other similar monetary amount based, in whole or in part, on an insured's unlawful gain or profit, alleged or otherwise.

The Homeowner's, Farmers CGL, and Truck CGL Policies also provided numerous exclusions from coverage.

¶7    On May 13, 2021, Davey and Yatsko filed a brief in opposition to the Insurers' motion for summary judgment. In addition, they also filed the Affidavit of Brad Davey and the Affidavit of Dale Yatsko. In Davey's affidavit, he stated, in relevant part:

> In the underlying action, and as a result of acts and omissions committed by Dennis Mineymer [sic] and other individuals. I suffered so much physical

8

and emotional stress that I had to be admitted to the hospital for significantly elevated blood pressure.  That is part of the basis of the word "injury" that I used in my lawsuit.  I did indeed suffer personal injury in this case as a result of the acts and omissions committed by Mr. Minemyer and others.

In Yatsko's affidavit, he stated, in relevant part:

In the underlying action, and as a result of acts and omissions committed by Dennis Mineymer [sic] and other individuals, I suffered such stress that I had to go to the hospital for a procedure done on my heart.  I know that this is part of the stress that I was under as a result of the acts and omissions of Defendant Minemyer and others.  These acts and omissions are described in my complaint and this is a part of the "injury" that [sic] suffered.

¶8     On May 26, 2021, Minemyer filed a Cross-Motion for Summary Judgment, asserting summary judgment should be granted in his favor because "there are no genuine issues of material fact and Mr. Minemyer is entitled to judgment as a matter of law."  In his combined brief in response to the Insurers' motion and in support of his cross-motion for summary judgment, Minemyer asserted the Truck CGL Policy was not implicated by the facts asserted in the Underlying Lawsuit, but coverage was provided under both the Homeowner's and Farmers CGL Policies.  The Insurers filed a reply brief to Davey and Yatsko's response on May 27, 2021, and a combined brief in reply to Minemyer's response and response to Minemyer's cross-motion for summary judgment on June 23, 2021.  Minemyer did not file a reply brief and no party requested oral argument on the competing motions.

¶9     On January 21, 2022, the Insurers filed the Petitioners' Notice to the Court, informing the District Court that Davey and Yatsko had filed a Second Amended Complaint in the Underlying Lawsuit on December 17, 2021.  The Insurers asserted the Second Amended Complaint did not change the coverage issues before the court, but were

9

willing to submit additional briefing at the court's request. Minemyer filed a response asserting the Second Amended Complaint added new claims of oral defamation and the filing of a lis pendens[2] on Davey and Yatsko's property, which would have "significant implications on the defenses to coverage" raised by the Insurers and requested the District Court reopen briefing on the cross-motions for summary judgment. The Insurers filed a reply brief on February 8, 2022.

¶10 On February 9, 2022, the District Court issued its Order (Request for Supplemental Summary Judgment Briefing). The court ordered the parties to file supplemental briefing regarding the Second Amended Complaint in the Underlying Lawsuit. Davey and Yatsko filed their supplemental brief on February 17, 2022, while both Minemyer and the Insurers filed their supplemental briefs on February 25, 2022. Though Minemyer had previously asserted the Truck CGL Policy was not implicated, Minemyer now asserted the Insurers had a duty to defend him "against the Second Amended Complaint under both CGL Policies" and that the Insurers had a "duty to defend under all three policies." Minemeyer and the Insurers thereafter each filed a supplemental response brief on March 11, 2022. No party requested oral argument on the cross-motions after the supplemental briefing.

¶11 On July 20, 2022, the District Court issued its Opinion and Order (Petitioners' Motion for Summary Judgment & Respondent Minemyer's Cross-Motion). The District

---

[2] A lis pendens, as alleged here, is a "notice, recorded in the chain of title to real property, required or permitted in some jurisdictions to warn all persons that certain property is the subject matter of litigation, and that any interests acquired during the pendency of the suit are subject to its outcome." *Lis pendens*, *Black's Law Dictionary* (11th ed. 2019).

Court found the Insurers had no duty to defend Minemyer under the Homeowner's, Farmers CGL, or Truck CGL Policies.[3] The court found Minemyer failed to meet his initial burden to demonstrate the claims fell under the coverage grant and did not address any exclusions to the Policies. The District Court's order found the claims, as alleged in the Underlying Lawsuit, did not constitute "bodily injury" or "property damage" under the language of any of the Policies, failed to show the offense of malicious prosecution was committed within the Farmers CGL policy period, and failed to show the offense of slander was committed within the CGL policy periods.

¶12 Minemyer appeals. Additional facts will be discussed as necessary below.

## STANDARD OF REVIEW

¶13 We review a district court's grant or denial of summary judgment de novo, applying the same criteria as M. R. Civ. P. 56. *Fire Ins. Exch. v. Weitzel*, 2016 MT 113, ¶ 10, 383 Mont. 364, 371 P.3d 457. Summary judgment is only appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶ 37, 345 Mont. 12, 192 P.3d 186.

---

[3] Relying on Minemyer's previous assertion from his cross-motion for summary judgment that the Truck CGL Policy was not implicated in the Underlying Lawsuit, the District Court did not specifically address coverage under the Truck CGL Policy other than in relation to the slander claim. In his supplemental briefing, Minemyer appeared to walk this back by asserting the Insurers had a duty to defend him "under both CGL Policies" and "under all three policies." Regardless, under the coverage analysis done by the District Court in this case, the result—finding no duty to defend under the Truck CGL Policy—would be the same.

11

¶14    The interpretation of an insurance policy presents a question of law, which we review for correctness. *Town of Geraldine v. Montana Mun. Ins. Auth.*, 2008 MT 411, ¶ 8, 347 Mont. 267, 198 P.3d 796 (citations omitted).

## DISCUSSION

¶15    *Did the District Court err by finding Insurers had no duty to defend Minemyer under the terms of the insurance policies?*

¶16    This matter comes to us following cross-motions for summary judgment where the parties each asserted there are no material facts in dispute. On appeal, we are simply tasked with interpreting the insurance policies at issue and determining whether the Insurers had a duty to defend Minemyer based on the language of the policies and the factual allegations of the Underlying Lawsuit.

¶17    "An insurer has a duty to defend when a complaint against an insured alleges facts which, if proved, would result in coverage." *Farmers Ins. Exch. v. Wessel*, 2020 MT 319, ¶ 14, 402 Mont. 348, 477 P.3d 1101 (citing *Weitzel*, ¶ 12). "The insured bears the initial burden to establish that the claim falls within the basic scope of coverage." *Weitzel*, ¶ 13 (citing *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research*, 2005 MT 50, ¶ 29, 326 Mont. 174, 108 P.3d 469). "If there is no coverage under the terms of the policy based on the facts contained in the complaint, there is no duty to defend." *Wessel*, ¶ 14 (citing *Weitzel*, ¶ 12). If the insured meets the initial burden of showing that the claim falls within the basic scope of coverage, then the burden shifts to the insurer to show that the claim is unequivocally excluded under an exception within the coverage. *Wessel*, ¶ 14 (citing *Weitzel*, ¶ 13).

12

¶18 When a court compares allegations of liability advanced in a complaint with policy language to determine whether the insurer's obligation to defend was triggered, the court must liberally construe allegations in a complaint in favor of finding that the obligation to defend was activated unless there is an unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage. *Christian v. United Fire & Cas. Co.*, 2023 MT 100, ¶ 14, 412 Mont. 340, 530 P.3d 456 (citing *Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, ¶ 22, 321 Mont. 99, 90 P.3d 381). "Factual disputes between the parties relevant to coverage 'must be resolved in favor of coverage.'" *Weitzel*, ¶ 12 (quoting *Staples*, ¶ 24).

¶19 Minemyer asserts the District Court erred because the Insurers owed him a duty to defend on four separate claims in the Underlying Lawsuit: slander, malicious prosecution, loss of tangible property, and bodily injury. It is Minemyer's burden as the insured to establish the claims of this case fall "within the basic scope of coverage" before the duty to defend would be triggered. *Weitzel*, ¶ 13. "If a complaint states multiple claims, some of which are covered by the insurance policy and some of which are not, it is a mixed action. In these cases, Montana follows what is known as the mixed-action rule, which requires an insurer to defend all counts in a complaint so long as one count triggers coverage, even if the remaining counts do not trigger coverage." *Weitzel*, ¶ 14 (citing *State Farm Fire & Cas. Co. v. Schwan*, 2013 MT 216, ¶ 16, 371 Mont. 192, 308 P.3d 48). Accordingly, if the District Court did err on any of these four claims, the Insurers would be required to defend Minemyer against all claims. We address each in turn.

13

### a. Slander

¶20   Minemyer asserts the Insurers owe a duty to defend him under the terms of the Farmers and Truck CGL Policies because the Second Amended Complaint in the Underlying Lawsuit contains an undated allegation of slander, therefore creating a factual dispute that must be resolved in favor of coverage. The District Court rejected this argument because the parties agreed the Underlying Complaint did not specify when the alleged defamatory statements were made or what the statements were and inserting the allegation the statements were made during the policy periods to the undated claim of the Underlying Complaint would be "based entirely on speculation." The Insurers contend Minemyer is asking this Court to "insert facts into the pleadings to support his argument that the claim falls within coverage."

¶21   "An insurer's duty to defend its insured arises when an insured sets forth facts that present a risk that possibly would be covered by the terms of an insurance policy." *Horace Mann Ins. Co. v. Hanke*, 2013 MT 320, ¶ 24, 372 Mont. 350, 312 P.3d 429 (citing *Staples*, ¶ 22). We liberally construe allegations in a complaint in favor of finding that a duty to defend exists. *Staples*, ¶ 22. The insured bears the initial burden of establishing that the claim falls within the basic scope of coverage, however. *Weitzel*, ¶ 13. In addition, "[s]ummary judgment cannot be defeated by unsupported speculation." *Knucklehead Land Co. v. Accutitle, Inc.*, 2007 MT 301, ¶ 26, 340 Mont. 62, 172 P.3d 116.

¶22   Together, the Farmers CGL and Truck CGL Policies at issue provided Minemyer coverage from 2014-2021. Each policy provides that Minemyer is entitled to a defense against a claim for personal or advertising injury, which, as defined in the Policies, includes

14

the oral or written publication of material that slanders or libels a person. The Second

Amended Complaint in the Underlying Lawsuit contained the following allegations

relevant to the offense of slander:

> [The 2012 Lawsuit plaintiffs][4] accused [Davey and Yatsko] of having committed fraud, published those statements to others and these allegations were likewise false and constitutes defamation per se. . . . The assertions against [Davey and Yatsko] by [the 2012 Lawsuit plaintiffs] had a natural tendency to injure [Davey and Yatsko] and [Davey and Yatsko] were indeed injured by the defamatory written and oral allegations and statements advanced by the Defendants against them.

> . . .

> The allegations leveled against [Davey and Yatsko] by [the 2012 Lawsuit plaintiffs] were also grossly negligently advanced as there was really no basis for making the statements against [Davey and Yatsko] which were made.

> . . .

> Dennis Minemyer, a CPA, negligently and recklessly provided much of the factual information which was false and erroneous and then used the same to develop the complaint allegations against [Davey and Yatsko]. . . . Minemyer knew or should have known that [his] input into the lawsuit lacked sufficient due diligence such that the allegations themselves were erroneous and should not have been made.

> . . .

> When the [2012 Lawsuit plaintiffs] orchestrated the filing of the [2012 Lawsuit] Complaint against [Davey and Yatsko], made defamatory statements about [Davey and Yatsko] and wrongfully filing a lis pendens against [Davey and Yatsko's] property, without even telling them, the [2012 Lawsuit plaintiffs] tortiously damaged [Davey and Yatsko].

---

[4] While Minemyer was not a named plaintiff in the 2012 Lawsuit, the allegations of Davey and Yatsko's Underlying Lawsuit, with some exceptions not relevant here, tend to refer to both the actual plaintiffs and Minemyer interchangeably. When used in this Opinion, the term "2012 Lawsuit plaintiffs" is inclusive of both the actual plaintiffs and Minemyer.

Reviewing these allegations, the District Court found Minemyer's claim the alleged slander was committed during the policy periods was "based entirely on speculation," because Davey and Yatsko did not allege any time periods to correspond with allegations of any new oral defamatory statements other than the filing of the 2012 Lawsuit and the defamatory written allegations.

¶23 We agree with the District Court. Even liberally construing the allegations in favor of Minemyer, *Christian*, ¶ 14, does not lead to a determination he has met his burden of demonstrating coverage. Liberal construction of a complaint in favor of the insured does not require a court to insert facts that have not been alleged in order to find coverage. *See generally Weitzel*, ¶¶ 21-24. The undated allegation of slander makes no claim the slander was made during either the Farmers or the Truck CGL Policy periods. Minemyer admits as much, noting that the "reality is that the Underlying Complaint is silent as to what Minemyer allegedly said and when he allegedly said it," but then asks this Court to make the assumption the slander did occur during the policy periods. We decline to do so. The allegations of the Second Amended Complaint in the Underlying Lawsuit, if proven, do not allege that the slander was committed during the policy periods. As such, Minemyer's "argument is based entirely on speculation without a basis in the facts actually pled in the complaint." *Weitzel*, ¶ 24. While Minemyer complains that the District Court somehow shifted the burden to him to demonstrate the slander did occur during the policy period, we are not convinced by this argument because the initial burden to establish the claim falls within the basic scope of coverage lies with him. *Weitzel*, ¶ 13. The undated slander claim here, added to the Underlying Lawsuit by Davey and Yatsko after the parties had already

16

moved for summary judgment in the present case, does not present a claim which falls within the basic scope of coverage because it is not alleged in the Underlying Complaint to have happened during the CGL policy periods. The District Court therefore correctly determined the Insurers did not have a duty to defend Minemyer from the slander claim under either the Farmers CGL or the Truck CGL Policies.

### b. Malicious Prosecution

¶24 Minemyer next claims he is entitled to a defense from Davey and Yatsko's malicious prosecution claim under the Farmers CGL Policy, correctly noting he was not a named plaintiff in the 2012 Lawsuit. The Insurers assert the offense of malicious prosecution occurred on the date of the filing of the 2012 Lawsuit. Minemyer, meanwhile, argues the malicious prosecution offense occurred later, because Davey and Yatsko were not actually served and did not voluntarily answer that complaint under November 2015. The District Court concluded Davey and Yatsko's alleged damages arose from the filing of the 2012 Lawsuit in 2012, which did not occur during the Farmers CGL Policy period, which did not begin until 2014.

¶25 A claim for malicious prosecution is established upon a showing of six elements:

> (1) a judicial proceeding was commenced and prosecuted against the plaintiff;
>
> (2) the defendant was responsible for instigating, prosecuting or continuing such proceeding;
>
> (3) there was a lack of probable cause for the defendant's acts;
>
> (4) the defendant was actuated by malice;
>
> (5) the judicial proceeding terminated favorably for plaintiff; and

17

(6) the plaintiff suffered damage.

*McAtee v. Morrison & Frampton, PLLP*, 2021 MT 227, ¶ 17, 405 Mont. 269, 512 P.3d 235

(quoting *Plouffe v. Mont. Dep't of Pub. Health & Human Servs.*, 2002 MT 64, ¶ 16, 309

Mont. 184, 45 P.3d 10).

¶26     The Farmers CGL Policy provided Minemyer with "personal and advertising

injury" coverage caused by an "offense" committed during the policy period. This question

has not been squarely addressed in Montana. To determine when the offense of malicious

prosecution occurred, the District Court relied on out-of-state cases for the proposition that

the tort of malicious prosecution occurs upon the filing of the complaint. The California

Court of Appeal, in addressing an insurance dispute where the policy required the offense

of malicious prosecution to be committed within the policy period noted that in California,

like Montana, the "favorable termination of the offending action is a prerequisite to the

filing of the malicious prosecution action[.]" *Zurich Ins. Co. v. Peterson*, 188 Cal. App.

3d 438, 444 (Cal. Ct. App. 1986). Nevertheless, after surveying the issue across the

decisions of several states, the California court held that "for purposes of an insurance

policy which measures coverage by the period within which the 'offense is committed,'

the tort of malicious prosecution occurs upon the filing of the complaint." *Zurich Ins. Co.*,

188 Cal. App. 3d at 448. This continues to be the majority position across the nation, as

the "majority of jurisdictions that have considered the issue have concluded that the

'occurrence' causing personal injury under an insurance policy is the filing of the

18

underlying malicious suit[.]" *Billings v. Commerce Ins. Co.*, 936 N.E.2d 408, 412 (Mass. 2010) (collecting cases).

¶27 The tort of malicious prosecution includes not just the commencement of a judicial proceeding, but the prosecution of the proceeding as well. It also requires that "the defendant was responsible for instigating, prosecuting or continuing such proceeding[.]" *McAtee*, ¶ 17. So while the ongoing tort of malicious prosecution may span months or even years, for purposes of determining whether or not it falls within a particular insurance coverage period, clarity requires that we determine a specific date constituting the occurrence of the offense. Consistent with the reasoning of the majority of jurisdictions that have considered this issue, we hold that *solely* "for purposes of an insurance policy which measures coverage by the period within which the 'offense is committed,'" the tort of malicious prosecution occurs upon the commencement of the judicial proceeding on which the malicious prosecution claim is based. To hold otherwise would allow a party who did not have an insurance policy covering malicious prosecution when the underlying lawsuit was filed to later purchase coverage and force the insurer to defend and indemnify against a claim of malicious prosecution arising out of the previously filed suit. Such a result has been consistently rejected by the majority of the states who have addressed the issue, *see Zurich Ins. Co.*, 188 Cal. App. 3d at 448 and *Billings*, 936 N.E.2d at 413, and we join them in rejecting such a theory. Because the Farmers CGL Policy did not exist until 2014, and the judicial proceeding on which the malicious prosecution claim is based was commenced prior to the effective policy period, the District Court correctly held that the Insurers had no duty to defend against this claim.

19

### c. Loss of Tangible Property

¶28 Minemyer next asserts Farmers owed him a duty to defend against Davey and Yatsko's claim of property damage under the Farmers CGL Policy. The Underlying Complaint alleged Davey and Yatsko had a lis pendens filed against their property, had their property "tied up for a significant period of time," and were "unable to sell or use the property" due to the 2012 Lawsuit. Minemyer argues the loss of use allegations of Davey and Yatsko's complaint, when liberally construed in his favor, sufficiently allege "property damage" so as to be covered under the Farmers CGL Policy. The Insurers contend Davey and Yatsko alleged only pecuniary damages and the District Court correctly concluded none of the claims in the Underlying Lawsuit qualified as "property damage."

¶29 Under the relevant portion of the Farmers CGL Policy, "property damage" is defined as the "[l]oss of use of tangible property that is not physically injured." The Farmers CGL Policy does not define "loss of use of tangible property[.]" "Tangible property is property that is capable of being handled, touched[,] or physically possessed." *Graber v. State Farm Fire & Cas. Co.*, 244 Mont. 265, 269, 797 P.2d 214, 216 (1990) (collecting cases). The Underlying Complaint alleged Davey and Yatsko suffered damages because "their property was tied up for a significant period of time," and "were unable to sell or use the property in the interim." As recognized by the District Court, the allegations of the Underlying Complaint did not allege Davey and Yatsko were somehow "prohibited from physically accessing, physically interacting with, or otherwise physically using the property," but were in fact an allegation of economic loss because they were unable to sell the land or otherwise use it for business opportunities.

¶30     Minemyer contends the allegations of the Underlying Complaint, when liberally construed in his favor, do allege the loss of use of tangible property because Davey and Yatsko alleged they "were unable to . . . use" the property.  Such a reading is divorced from the actual context of the Underlying Complaint, where all allegations of damage to Davey and Yatsko's property were economic in nature, such as the lis pendens and not being able to sell the property.  Such claims do "not constitute property damage, or loss of use of tangible property."  *Graber*, 244 Mont. at 269, 797 P.2d at 217.  The District Court correctly read the entire paragraph, and the complete sentence, at issue here and came away with the interpretation Davey and Yatsko made no allegation they were somehow physically prevented from accessing or using the property at issue in the 2012 Lawsuit.  A conveniently placed ellipsis to remove context does not change this basic fact.  "Montana courts have consistently held that in order for economic loss to be covered by insurance a direct physical injury to tangible property must occur."  *Graber*, 244 Mont. at 269, 797 P.2d at 216 (collecting cases).  No physical injury to Davey and Yatsko's property occurred and their alleged economic loss does not qualify as "property damage" under the Farmers CGL Policy.

### d.  Bodily Injury

¶31     Finally, Minemyer asserts the Insurers owed him a duty to defend under terms of all three policies because Davey and Yatsko filed affidavits asserting they suffered "bodily injury" in response to the Insurers' summary judgment motion.  The Insurers contend Davey and Yatsko's self-serving affidavits fail to cure the deficiency that the Underlying Complaint contains no allegation of bodily injury.  The District Court found Davey and

21

Yatsko did not allege bodily injury in the Underlying Complaint and that their affidavits were "not sufficient documented evidence to support the allegations of physical manifestations of injury to trigger coverage." Again, we agree with the District Court.

¶32 "Bodily injury" is defined in all three policies at issue here. Under the Homeowner's Policy, bodily injury "means physical harm to the body, including physical sickness or disease," to a person other than an insured. The Homeowner's Policy further provides that bodily injury does not include "psychological injury or effect, including by way of example but not limited to fear, depression, humiliation, anxiety, anguish, shock or distress, unless it arises from actual physical harm to the body of a person." Under the CGL Policies, bodily injury "means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

¶33 Nowhere in the Second Amended Complaint filed in the Underlying Lawsuit is there any specific reference to bodily injury suffered by either Davey or Yatsko. Davey's affidavit, filed in response to the Insurers' motion for summary judgment, asserted he "had to be admitted to the hospital for significantly elevated blood pressure" due to stress. Yatsko's affidavit, meanwhile, asserted he "had to go to the hospital for a procedure done on my heart" due to stress.

¶34 "Each case must necessarily be judged by its own facts to determine whether the alleged injuries are sufficiently akin to physical injuries to fall within coverage for 'bodily injury.' Such conditions include those which are susceptible to medical diagnosis and treatment in a manner which distinguishes them from mental injuries." *Allstate v. Wagner-Ellsworth*, 2008 MT 240, ¶ 42, 344 Mont. 445, 188 P.3d 1042. Judging this case

22

by its own facts, the District Court found Davey and Yatsko did not allege bodily injury in the Underlying Lawsuit and their self-serving affidavits filed in response to the Insurers' motion for summary judgment were "not sufficient evidence to support the allegations of physical manifestations of injury to trigger coverage." *See State Farm Fire & Cas. Co. v. Basham*, 520 N.W.2d 713, 715 (Mich. Ct. App. 1994) ("At a minimum, there must be allegations of physical manifestations supported by sufficient documented evidence in order for insurance coverage to be triggered.").

¶35    We agree with the District Court that the Underlying Complaint failed to set forth a claim of bodily injury which would be covered by any of the Policies. The initial complaint in the Underlying Lawsuit was filed in March of 2018. It was not until over three years later, in May of 2021, where Davey and Yatsko first made any allegation which could even possibly be construed as "bodily injury" through their self-serving affidavits alleging each had to go to the hospital due to "stress." The District Court properly took these self-serving affidavits for what they were, merely weak evidence to be received with caution and not conclusive of the facts stated therein. Neither Davey nor Yatsko provided any evidence, beyond their affidavits filed in response to the summary judgment motion, let alone "sufficient documented evidence," to support their newly-discovered claim—over three years into litigation—of a physical manifestation of injury. There was certainly no allegation of hospital visits in the Underlying Complaint. Because there was no sufficient documented evidence to support Davey and Yatsko's newfound allegations of physical manifestations of injury, Minemyer's insurance coverage was not triggered in this case. *See Wagner-Ellsworth*, ¶ 42 (citing *Basham*, 520 N.W.2d at 715).

23

¶36 Because Minemyer failed to meet his burden of demonstrating the claims fell within the scope of coverage of any of the policies at issue, it is unnecessary to address whether the claims would also be excluded by any exceptions to the coverage under the terms of the policies. As such, the District Court correctly granted the Insurers' motion for summary judgment and denied Minemyer's cross-motion for summary judgment.

## CONCLUSION

¶37 The District Court correctly granted the Insurers' motion for summary judgment and found the Insurers had no duty to defend Minemyer for claims of slander, malicious prosecution, loss of tangible property, and bodily injury under the terms of the policies at issue and the facts of this case.

¶38 Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR